UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | | |
|---|---|---|
| MARY EVELYN HOLLERAN, | ) | |
| | ) | |
| Plaintiff, | ) | 13-193-GFVT |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| CAROLYN W. COLVIN, Acting | ) | **ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The plaintiff, Mary Evelyn Holleran, seeks judicial review pursuant to 42 U.S.C. §§ 405(g), of an administrative decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits ("DIB"). For the reasons stated herein, the Court will deny Holleran's Motion for Summary Judgment [R. 12], and grant that of the Commissioner [R. 13].

**I**

Holleran first filed for DIB on December 15, 2009. [Tr. 69.] She was denied and did not seek reconsideration of that decision. [Tr. 101; R. 12 at 2.] On November 1, 2010, Holleran filed a new application for DIB, alleging a disability beginning on October 31, 2009. [Tr. 176.] Holleran was 62 years old as of her alleged onset date. [*Id*.] Her second application was denied initially and upon reconsideration. [Tr. 82-83, 101-104, 109-112.] A hearing was held before Administrative Law Judge ("ALJ") Ronald Kayser in Lexington, Kentucky, where the ALJ heard testimony from Holleran and from Joyce Forrest, a vocational expert. [Tr. 33-67.] Holleran has

a Master's degree in English [Tr. 36, 43] and past relevant work as a pilot/escort driver, a dispatcher, and a teacher. [Tr. 25, 56-67.] The ALJ adopted Forrest's testimony and concluded that Holleran could perform her past relevant work. [Tr. 25.] On June 25, 2012, ALJ Kayser issued a decision denying Holleran benefits. [Tr. 20-27.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. § 404.1520.[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. § 404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairments experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). The plaintiff has the ultimate burden of proving compliance with the first four steps. *Kyle v. Comm'r Of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

In this case, the ALJ determined, at Step 1, that Holleran had not engaged in substantial gainful activity since the alleged disability onset date. [Tr. 22.] At Step 2, the ALJ found that Holleran had the following severe impairments: "degenerative disc disease of the cervical and lumbar spine; status post bilateral total knee replacements; chronic obstructive pulmonary disease; polysubstance abuse." [*Id*.] At Step 3, the ALJ concluded that Holleran did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)," so the analysis continued to the next step. [*Id*.] Next, the ALJ concluded that Holleran had a residual functional capacity (RFC) to "perform a range of light work as defined in 20 CFR 404.1567(b)" with the following limitations:

> lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk two hours of an eight hour day with a sit/stand option allowing her to get up and move around the work station every 35 minutes to an hour; sit six hours of an eight hour day; would have limits on pushing or pulling with the lower extremities; no climbing ladders, ropes, or scaffolds; only occasionally climbing ramps and stairs; occasionally balance, kneel, crouch, crawl, or stoop; and should have only limited exposure to temperature extremes, full body vibration, humidity, wetness, dusts, fumes, chemicals, dangerous machinery, and heights.

[Tr. 22-23.] At Step 4, the ALJ adopted the findings of the Vocational Expert and determined that Holleran is "capable of performing past relevant work as a pilot/escort driver; dispatcher; or at least 50% of teaching jobs." [Tr. 25.] At Step 5, the ALJ alternatively found that other jobs

exist in the national economy that Holleran could perform outside of her past relevant work. [Tr. 25-26.] On September 12, 2013, the Appeals Council notified Holleran that it found no reason to upset this decision [Tr. 1-3] and Holleran now seeks judicial review in this Court.

## II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (*citing Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also

supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Holleran raises five issues on appeal to this Court. First, she argues that the ALJ failed to properly consider and weigh the medical evidence. [R. 12 at 4-6.] Second, she argues that the ALJ improperly discounted her credibility by "failing to provide specific rationale for rejecting [her] testimony as required by SSR 96-7p." [Tr. 6-8.] Third, she complains that the ALJ's RFC assessment is conclusory. [Tr. 8-9.] Fourth, Holleran argues that the vocational expert improperly relied on the DOT. [Tr. 9-11.] Finally, Holleran contends that the ALJ's alternative finding that she is capable of performing other positions in the national economy, besides her past relevant work, is not supported by substantial evidence. [Tr. 11-13.]

### A

Holleran argues that the ALJ failed to "discuss and resolve or discredit conflicts in the evidence," complaining specifically of three instances in which she believes the ALJ neglected his duties in reviewing the record. [R. 12 at 5.] In sum, she argues that the ALJ erred in weighing the medical opinion evidence. [R. 12 at 7.]

When deciding how much weight to afford a medical opinion, the following factors should be considered: (1) the nature of the examining relationship, (2) treating relationship, (3) the supportability of the source's opinion, (4) the opinion's consistency with the record as a whole, (5) the doctor's degree of specialization, and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c); § 416.927(e); *see also* SSR 96–6p at *2–*3. The opinions of doctors who actually examine a claimant are generally given more weight than the opinions of non-examining sources although the opinion of a doctor who only examined a

claimant once is not entitled to the special deference as that of a treating physician. 20 C.F.R. § 404.1527(c)(1); *Smith v. Comm'r of Soc. Sec. Admin.*, 564 F. App'x 758, 763 (6th Cir. 2014).

Importantly, it is the responsibility of the ALJ, not Holleran, to weigh the evidence of record. *See Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988) ("Although the record is replete with inconsistent medical reports and [the Claimant's] own conflicting testimony, we acknowledge the discretion vested in the ALJ to weigh all the evidence.") (*citing Myers v. Richardson,* 471 F.2d 1265 (6th Cir. 1972); *Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987)); *see also Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")

First, Holleran asserts that the ALJ erred by considering the results of an April 2012 MRI which found disc bulges but "no central stenosis" [Tr. 24, 487] while disregarding a December 2009 MRI which concluded there was "central canal stenosis" [Tr. 444]. According to Holleran, the ALJ made no effort to reconcile the two MRIs but, rather, ignored the MRI that resulted in a positive finding of central stenosis. [R. 12 at 4-5.] Holleran is mistaken. As pointed out by the Commissioner, the ALJ did consider the earlier MRI results, noting that the "MRI of the claimant's cervical spine in December of 2009 identified loss of cervical ordosis consistent with muscle spasm" and also "mild central stenosis at C3-4 through C7-T1." [Tr. 23, 433.]

Second, Holleran disagrees with the ALJ's decision to assign Dr. Johnston's opinion little weight, arguing that Dr. Johnston's opinions were not inconsistent with the treatment notes of Dr. Kumler. [R. 12 at 6-7.] The ALJ summarized Dr. Johnston's findings in the following way:

> Dr. Johnston observed that the claimant had normal gait and station. She was not able to tandem walk, squat, kneel, hop, or bend, but was able to rise from a chair and to heel walk. She had 5/5 strength in the upper and lower extremities, and decreased sensation in

6

>the left upper extremity. She was able to button and unbutton bilaterally without difficulty, and could hold a pencil without difficulty. She had limited range of motion in the neck and hips, with straight leg raising limited to 45 degrees bilaterally sitting and supine. Dr. Johnson stated that the claimant should not lift more than 10 pounds at any time, should not walk more than 200 yards on flat ground, should not climb more than two flights of stairs without stopping to rest, and should not stand more than 30 minutes.

[Tr. 24 (*citing* Tr. 353-358.)] The ALJ concluded that Dr. Johnston's opinion was inconsistent with Dr. Kumler's assessment that Holleran was capable of performing "a sitting duty" or "some limited light duty." [Tr. 24, 387.] A more complete passage from Dr. Kumler's assessment following his November 2010 examination is reprinted here:

>[Holleran] feels very strongly that she needs to go ahead with knee replacement and wants to do at least one of them before she gets her Medicare. She has been working on getting Disability. She explains today that she thinks she deserves it and should be able to get it. She explains how her back disables her for most things and what they want to put her in because of her back as a call duty of desk type duty and she states her knees prevent her from doing any desk type duty or sitting duty. **I cannot say that I would agree with her. I would think that she should be able to do a sitting duty. A sitting duty allows her to straighten and bend her knees, change positions, and does not require [her] to stand on her knees and would not put her at risk for falling, so I do think she should be able to do some light limited duty.** I also cautioned her about rushing in the knee surgery with all her other symptoms including her back.

[Tr. 387.] The ALJ provided the following reasons for further discounting Johnston's opinions.

Dr. Johnston saw Holleran only once, in April 2010. [Tr. 24.] The ALJ gave little weight to his opinion because "the limitations [Dr. Johnston] has described bear little relation to his findings on examination." [Tr. 24.] Specifically, the ALJ noted that (1) Dr. Johnston found Holleran had a normal gait but limited her to walking no more than 200 yards and that (2) Dr. Johnston found Holleran to have both normal strength and normal ability to manipulate objects but then limited her to lifting no more than 10 pounds. [Tr. 24.] With these facts in mind, and contrary to Holleran's objection, the ALJ's decision to afford Dr. Johnston's opinions little weight is certainly supported by substantial evidence.

7

Third, Holleran criticizes the ALJ for focusing on her knee pain, while minimizing his discussion of her back pain. [R. 12 at 4.] She directs the Court's attention to Dr. Kumler's November 2010 statement which she believes appropriately focus on her back problems as opposed to her knee issues. [R. 12 at 7; Tr. 387.] This argument is without merit; the ALJ considered both her back pain and knee pain. The ALJ found that one of Holleran's *severe impairments* was "degenerative disc disease of the cervical and lumbar spine." [Tr. 22.] As discussed *supra*, the ALJ considered two separate MRIs on Holleran's spine. [*See* Tr. 23.] He also noted that "Hollaran uses a TENS unit, back brace, and home traction to treat her back pain." [Tr. 23.]

It is the ALJ's responsibility to weigh the evidence of record, *see Bradley,* 862 F.2d at 1227, and the ALJ performed that function as he was supposed to. His opinion is supported by substantial evidence.

**B**

Second, Holleran argues that the ALJ improperly discounted her credibility by "failing to provide specific rationale for rejecting [her] testimony as required by SSR 96-7p." [Tr. 6-8.] Holleran notes that SSR 96-7p warns that "[i]t is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." SSR 96-7P (S.S.A. July 2, 1996).

In determining whether a claimant is disabled, the Commissioner considers statements or reports from the claimant. 20 C.F.R. § 404.1529. To determine whether statements of a claimant are credible, the ALJ employs a two-part test:

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must

8

> evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (*citing* 20 C.F.R. § 416.929(a)) (internal citations omitted). The following factors guide agency decision makers when making credibility determinations:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also, Felisky v. Bowen*, 35 F.3d 1027, 1037 (6th Cir. 1994). "Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints 'based on a consideration of the entire case record.'" *Rogers,* 486 F.3d at 247.

Importantly, it is within the province of the ALJ, rather than the reviewing court, to evaluate the credibility of claimant. *Id.* (*citing Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan,* 921 F.2d 642, 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981)). "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citations omitted). Notwithstanding this deference, an ALJ's credibility determination must be reasonable and supported by substantial evidence. *Id*. at 249.

The ALJ found that Holleran's impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible. [Tr. 24-25.] The ALJ concluded that the record evidence contradicted Holleran's testimony and provided the following specific examples. First, the ALJ noted that Holleran reported she lacked the mobility to answer phones for a dispatch job [Tr. 25, 244] but then testified at the hearing that she "keeps her house in order, reads, does crossword puzzles, cares for four dogs, founded an animal rescue group, and uses her computer" [Tr. 25, 51-52] and also reported in a questionnaire that she "cooks, cleans, does some laundry, drives, pays bills, handles bank accounts and washes dishes by hand." [Tr. 25, 209-216.] Second, the ALJ noted that Holleran's statements about her history of alcohol use contradicted the record evidence. Dr. Sweeney's questioned whether Holleran was being forthcoming about her alcohol use and reported that the claimant's family had previously expressed concern about her alcohol use and had staged an intervention. [Tr. 24, 411.] The ALJ also noted that Dr. Neus had observed that Holleran smelled of alcohol at a May 29, 2009 office visit and advised that she needed to abstain from further alcohol consumption. [Tr. 25, 305-307.] At the hearing, however, she denied abusing alcohol and also denied reporting to Sweeney that her family had been concerned about her alcohol use or had staged an intervention. [Tr. 25, 50.] Finally, the ALJ commented on the fact that no treating physician had stated that the claimant is disabled and that Dr. Kumler had actually opined that Holleran could perform "light limited duty" or work at a "desk job." [Tr. 25, 387.] As Holleran noted in her motion, the ultimate question of disability is reserved for the Commissioner, so the fact that no doctor opined that Holleran is disabled does not weight heavily into this Court's consideration.

Nevertheless, when one considers the deference afforded to an ALJ's findings on issues of credibility, *see Buxton,* 246 F.3d at 773, and the inconsistencies between the record evidence and Holleran's testimony, there is no question that the ALJ's opinion on her credibility is both in compliance with SSR 96-7p and is supported by substantial evidence.

### C

Third, Holleran complains that the ALJ's RFC assessment is conclusory, failing to provide sufficient "rationale or reference to the supporting evidence, as required by SSR 96-8p." [R. 12 at 9-10.] She argues that Drs. Johnston and Dr. Kumler drew similar conclusions about her inability to stand for extended periods of time and need to frequently change positions and charges that the ALJs conclusion that "a 63 year old, with bilateral knee replacement and significant degenerative changes in her cervical and lumbar spine could perform light work with a sit/stand option is not supported by the evidence." [R. 12 at 10.]

Despite Holleran's arguments to the contrary, the ALJ's conclusion that Holleran can perform light work with a sit/stand option is supported by substantial evidence. The ALJ's RFC assessment took into account that Holleran could only walk two hours of an eight hour day, leaving her able to sit for six hours. [Tr. 23.] As discussed previously, the ALJ did not fully adopt Holleran's own statements about the severity of her condition as he found her not fully credible. In reviewing the medical evidence, the ALJ considered (as previously discussed) her MRI results. He observed that Dr. Harris had found that Holleran had "strength at 5/5 in all extremities." [Tr. 23; 439.] In reflecting on her left-knee surgery, Dr. Kumler reported that she had done "outstanding." [Tr. 23; 479.] Dr. Neus reported that she had both normal gait and station. [Tr. 23; 470.] Even Dr. Johnston, whose opinion the ALJ gave little weight because he found his recommended limitations overly restrictive, reported that she had normal gait and

11

station, that Holleran could walk up to 200 yards and could stand for up to thirty minutes. [Tr. 24; 355.]

Importantly, the ultimate determination regarding RFC is reserved for the ALJ. 20 C.F.R. §404.1545(e); *Saylor v. Astrue*, 2009 WL 310911, at *2 (E.D. Ky. Feb. 9, 2009); *White v. Comm'r of Soc. Sec. Admin.*, 2013 WL 4817673, at *751 (N.D. Ohio Sept. 10, 2013); 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as … your residual functional capacity …the final responsibility for deciding these issues is reserved to the Commissioner.") Bearing in mind that this decision is one reserved for the ALJ, and the fact that it is supported by substantial evidence, it will not be overturned.

## D

Fourth, Holleran argues it was error for the vocational expert to depend solely on the dictionary of occupational titles ("DOT") when considering whether she was able to perform her past relevant work. Instead, Holleran contends that the physical requirements contained in the job descriptions on O*Net are more accurate.[2] [R. 12 at 10-11.] According to Holleran, had the VE utilized the job descriptions as provided on O*Net, then she would have found that Holleran was unable to perform these jobs.

Holleran looks to the Sixth Circuit's unpublished, and divided opinion in *Cunningham v. Astrue*, 360 F. App'x 606 (6th Cir. 2010) for support. In *Cunningham,* a panel of the Sixth Circuit was confronted with the question of "whether substantial evidence supports the conclusion that [document preparer or security camera monitor] jobs exist in substantial

---

[2] O*Net is the "Occupational Information Network." "O*NET OnLine is sponsored by the U.S. Department of Labor, Employment & Training Administration, and developed by the National Center for O*NET Development." *See* http://www.onetonline.org/.

numbers." *Id* at *614-615.  In that case, the claimant argued that the job descriptions contained in the DOT were obsolete.  *Id*.  The Court reviewed the descriptions, and noted that the VE's dependence on the DOT listing alone does not warrant a presumption of reliability.  *Id*. at *616.  The Sixth Circuit held that, on the record before them, they could not "adequately review whether these job descriptions were up-to-date and, thus, whether the VE's testimony was reliable." *Id*.  On this basis, they remanded the case for further consideration.  *Id*.

First, the question presented in *Cunningham* was different than the question presented here.  In that case, the Court was tasked with considering whether the ALJ's conclusion that there were a significant number of jobs existing in the national economy was supported by substantial evidence.  The *Cunningham* Court did not reach the question of whether Cunningham could perform the jobs.  *Id*. at *615.  In this case, the question is whether Holleran can perform her past relevant work.

Second, the positions the VE considered in this case do not strike this Court as "potentially vulnerable" for becoming obsolete.  Looking to the potentially obsolete descriptions considered in *Cunningham* makes this point.  For example, the Sixth Circuit noted that a document preparer,

> Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife. Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material.... Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.

*Id*. at \*615 (quoting United States Department of Labor, Dictionary of Occupational Titles (1991)).  The description for a security camera monitor appeared to be similarly dated, specifically noting that responsibilities include pushing a "hold button to maintain surveillance of location where incident is developing" and also "[a]djust[ing] monitor controls when required to improve reception."  *Id*. at \*616 (quoting United States Department of Labor, Dictionary of Occupational Titles (1991)).  Holleran does not suggest that the language in the DOT descriptions is outdated or antiquated, but only that the descriptions on O\*Net are different than the descriptions in the DOT.  This distinction is different than the one made in *Cunningham*.

The regulations specifically provide that the Commissioner is to take "administrative notice of reliable job information available from various governmental and other publications," including the "Dictionary of Occupational Titles, published by the Department of Labor."  20 C.F.R. § 404.1566(d)(1).  The regulations make no mention of O\*Net.  *See id*.  Taking these DOT descriptions into account, and based on the ALJ's hypothetical which limited Holleran to standing and walking two out of eight hours in a day, and sitting the remaining six hours, the VE opined that Holleran could perform her past relevant work as a pilot/escort, or as a dispatcher.  Also, the VE found she could perform "at least 50 percent of the school teaching jobs" because they will allow her to "alternate her positions."  [Tr. 59.]

The ultimate question for this Court is whether the ALJ's decision that Holleran can perform her past relevant work is supported by substantial evidence.  *See Earls v. Comm'r of Soc. Sec.*, 2011 WL 3652435, at \*7 (N.D. Ohio Aug. 19, 2011) ("Whether remand is appropriate in this instance boils down to whether substantial evidence supports the ALJ's conclusion that given [claimant's] age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that she can perform."); *Belew v. Astrue*, 2012 WL 3027114, at

14

*10 (E.D. Ky. July 24, 2012) (same). For the aforementioned reasons, and because the decision is supported by substantial evidence, it will not be disturbed.[3]

### III

Thus, after reviewing the record, the Court finds that the ALJ's decision is supported by substantial evidence. **ACCORDINGLY**, the Court being sufficiently advised, it is hereby ordered as follows:

(1) Holleran's motion for Summary Judgment [R. 12] is **DENIED**.

(2) The Commissioner's Motion for Summary Judgment [R. 13] is **GRANTED**.

(3) A judgment will be entered contemporaneously herewith**.**

This 27th day of March, 2015.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge

---

[3] Holleran also argues that the ALJ's alternative finding that she is capable of performing other positions in the national economy, besides her past relevant work, is not supported by substantial evidence. [Tr. 11-13.] The burden was on Holleran during the first four steps of the ALJ's analysis, *see Kyle v. Comm'r Of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). The Court has already found that the ALJ's decision that Holleran is capable of performing her past relevant work is supported by substantial evidence. Because Holleran did not meet her burden by proving that she could not perform her past relevant work, it was unnecessary for the ALJ to consider whether her impairments prevented her from doing other work that exists in the national economy. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 544-45 (6th Cir. 2007). Accordingly, it is also unnecessary for the Court to review this point of objection.